IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| VOLTAGE PICTURES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Nos.  6:13-cv-290-AA, 2:13-292-AA, 1:13-293-AA, 3:13-295-AA |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| DOES 1-198, DOES 1-12, DOES 1-34 DOES 1-371 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

AIKEN, Chief Judge:

Plaintiff Voltage Pictures instituted these actions on February 19, 2013, asserting copyright infringement against a large number of users of various BitTorrent clients, identified only by their internet protocol (IP) addresses.    Plaintiff alleges defendants collectively interconnected to illegally copy and

1 - ORDER

distribute plaintiff's motion picture. On February 22, 2013, the court granted plaintiff's motion to expedite discovery so that plaintiff could subpoena the various internet service providers (ISP) for the identity of the alleged infringers, and provided 45 days to name the Doe defendants or seek an extension.

On April 10, 2014, because plaintiff failed to amend or seek an extension to amend the complaints, the court ordered plaintiff to show cause why the complaints should not be dismissed. The court, having reviewed plaintiff's response, finds good cause has been shown for that failure. However, the court also ordered plaintiff to show cause why the various Doe defendants in the actions should not be severed for improper joinder. The court now has the benefit of plaintiff's response to that issue as well as briefing from some Doe defendants on the issue of joinder. In addition, the court has reviewed the arguments made before Magistrate Judge Coffin by plaintiff's counsel in similar actions involving Elf-Man, LLC against 107 Doe defendants. After reviewing the record and plaintiff's responsive materials, the court finds that the Doe defendants have been improperly joined and should be severed in favor of the filing of individual actions against each Doe defendant.

A BitTorrent client allows a group of users, through a torrent file and tracker, to share small pieces of a larger file with numerous other users to eventually download the whole file to each

2 - ORDER

individual user. Technically, no user shares the whole file with any other individual user (unless one user is an original uploader and only one other peer is in the swarm). In these cases, plaintiff asserts that the Doe defendants copied and published the film Maximum conviction via BitTorrent.

The court agrees that technological advances have resulted in anonymous and stealthy tools for conducting copyright infringement on a large scale. The court further agrees peer-to-peer sharing technologies, such as BitTorrent, have a serious impact on the profitability of the commercial production of films and music. But, the need to discover copyright infringers, who conduct their activities relatively anonymously, through peer-to-peer networks, must be balanced against the rights of Doe defendants who share no more of a connection than merely committing the same type of act in the same type of manner. While these are indeed the type of cases in which discovery, pre-service, is merited, the use of a reverse class action is not. This is especially true given the proliferation of the use of the courts' subpoena powers to troll for quick and easy settlements.

As previously noted, the manner in which plaintiff is pursuing the Doe defendants has resulted in $213,850 savings in filing fees alone.[1] While these costs are substantial, the amounts sought from

---

[1]As of the date the actions were instituted. As of May 1, 2013, that savings would be $244,400.

3 - ORDER

each individual defendant is $30,000 and, as noted below, could be increased to as much as $150,000. Even if the costs associated with piecemeal litigation could justify joinder in these cases, the statutory damages sought off-set that expense.

Under Federal Rule of Civil Procedure 20, joinder is proper if (1) plaintiff's claims arise out of the same transactions and occurrences and (2) some question of law or fact common to all the defendants will arise in the action. See Fed. R. Civ. P. 20(a); Desert Empire Bank v. Insurance Co. of N. Am., 623 F.2d 1371, 1375 (9th Cir. 1980). Even if these requirements are met, a district court must examine whether permissive joinder would "comport with the principles of fundamental fairness" or would result in prejudice to either side. Desert Bank, 623 F.2d at 1375.

Many judges have determined that the tactic of suing a large swath of users associated with IP addresses utilized in the BitTorrent cases, improperly joins dozens of defendants into a single action, i.e., swarm joinder. See, e.g., Digital Sins, Inc. v. John Does 1-245, 2012 WL 1744838 @ *2 (S.D.N.Y. May 15, 2012) (noting several courts have already determined joinder is improper); But See AF Holdings LLC v. Does 1-1,058, 286 F.R.D. 39, 55-56 (D.D.C.2012) (swarm joinder theory is permissible).

The number of courts holding that swarm joinder is not appropriate is growing. See Malibu Media, LLC v. John Does 1-54, 2012 WL 3030302 @ *2 (D.Colo. July 25, 2012) (collecting cases);

4 - ORDER

see also Raw Films, Inc. v. Does 1-32, 2011 WL 6840590 @ *2
(N.D.Ga. Dec. 29, 2011) (The swarm joinder theory "has been
considered by various district courts, the majority of which have
rejected it."). More recently, Judge James Gwin of the United
States District Court for the Northern District of Ohio took it
upon himself to sua sponte sever the Doe defendants in a BitTorrent
case--when he denied expedited discovery to discover the identities
of the individual Doe defendants--in favor of individual filings.
Safety Point Products, LLC v. Does, 2013 WL 1367078 (N.D.Ohio April
4, 2013).

    Plaintiff must allege facts that permit the court to at least
infer some actual, concerted exchange of data between the Doe
defendants. Malibu Media, LLC v. John Does 1-54, 2012 WL 3030302
at *2. Here the allegations demonstrate participation in the
alleged "collective" activity of sharing on dates ranging from:
November 19, 2012 to February 7, 2013; November 7, 2012 to February
6, 2013; November 18, 2012 to January 13, 2013; and November 7,
2012 to February 13, 2013. In addition, the various users utilized
differing ISPs in cities all over the State of Oregon. There is no
allegation that the users associated with each IP address left
their bitTorrent clients open continually downloading and uploading
the protected work over these months-long periods of time. Indeed,
it stretches credulity to suggest as much. The complaints merely
suggests that the Doe defendants committed the same type of

5 - ORDER

violation in the same way. While there may be the same type of transaction or occurrence in plaintiffs' infringement claims and certainly questions of law common to all defendants, the varying time periods, as well as a myriad of issues that may individually impact defendants, at a minimum, suggest a lack of fundamental fairness when joining all defendants into a single action.

For instance, the various BitTorrent cases in this district have already demonstrated some IP address are dynamic, some routers associated with the IP address are unsecured, more than one user shares an account associated with an IP address, some BitTorrent clients are configured in such a manner so as to only allow downloading and prevent uploading, and some IP addresses are associated with institutional accounts such as businesses or schools with a large amount of users. Not only can such differences among defendants create differing defenses to the allegations, they can create conflicts between defendants such that joinder would be unfairly prejudicial.

Moreover, the process is started generally by one person who breaks the encryption on the copyrighted material and begins the sharing process. The culpability associated with such a BitTorrent user, assuming that plaintiff's methods of detecting infringers encompasses this likely original uploader, is far greater than another who may inadvertently join in the process unaware of the protected nature of the files downloaded. Again, there is unfair

6 - ORDER

prejudice that will result by lumping such divergent defendants together in a single action.

Even the pleadings by plaintiff suggest a prejudicial difference among defendants wherein it suggests in the complaints that

> On information and belief, many defendants have paid money to facilitate or permit increased access to content which has been made available without authorization.
>
> To increase the value of the advertising and sometimes subscription access sold by torrent sites, many work to expand the pool of available titles and speed of downloads available through increasing the number of member peers and thus the desirability of their clients and networks. To accomplish this they reward participants who contribute by giving them faster download speeds, greater access, or other benefits.
>
> A significant element of the BitTorrent model is that those who participate and download movies not only share and upload movies with others, but participants are often rewarded through various means based on the volume and availability of content participants in turn provide the network. In sum, there is a feedback incentive for participants as they obtain not only the benefit of their pirated copy of a movie, but they obtain other benefits by increasing the availability of pirated content to others.
>
> As such there are a growing number of users that participate in peer-to-peer networks and receive personal gain or compensation in that the networks they use reward those who provide large numbers of files for upload to others. On information and belief, many defendants have been compensated for their participation in expanding the availability of pirated content to others through BitTorrent networks, including plaintiff's movie.
>
> Another growing element of the BitTorrent model is that users are able to attach advertising to the files they upload through various means allowing them to generate revenue through the propagation of the titles they make

7 - ORDER

available to others. While it may or may not be that any
of the defendants in this case are personally and
directly generating revenue from such conduct, there is
a high likelihood that the defendants are furthering such
efforts as they download and then re-publish pirated
content that has been pirated and used to provide
advertising to third parties.

The use of BitTorrent does more than cause harm through
the theft of intellectual property.  The BitTorrent
distribution is a model of business that profits from
theft through sales and advertising and a system of
rewards and compensation to the participants, each of
whom contributes to and furthers the enterprise.

E.g., Proposed Second Amended Complaint, 6:13-cv-293-AA (attached

to #16) at pp. 6-7. Thus, it is apparent that plaintiff seeks to

place all users with the same degree of culpability regardless of

intent, degree of sharing or profit.    For instance, the

grandparents whose young grandchild used their computer to download

what looks like an entertaining Christmas movie, to his innocent

mind, through their IP address, are the same as an organization

intentionally decrypting and duplicating DVDs en masse while

planting stealth viral advertising, or more nefarious Trojan

horses, into the upload stream. By being lumped together, the Doe

defendant who may have a legitimate defense to the allegedly

infringing activity is severely prejudiced.

    Indeed, while plaintiff earnestly claims to be defending

against the plague of peer-to-peer copyright infringement and

protect the hardworking men and women who produce movies right to

down to the gaffer and grip, appears to be employing a somewhat

8 - ORDER

underhanded business model of its own to raise profits for what may be a less than profitable, unpopular movies.  The court has a sample demand letter plaintiffs' counsel has been sending to the persons associated with the IP address upon their discovery.  In the letter, threats regarding severe punitive damages are made along with the not so subtle implication that liability is a foregone conclusion:

> you have been identified as the **party responsible** for the [IP] address used to **illegally copy or share** our client's copyright motion picture through ... BitTorrent.  This letter is a courtesy before we are **required** to take more formal legal action which would **involve adding you as named defendant** to the lawsuit ....
>
> Copyright infringement ... is very serious problem for the entertainment industry [and our] client takes the enforcement of its copyright seriously and **will use all legal means available to protect its rights.**
>
> The law ... allows the copyright owner ... to **recover attorney fees, and seek damages of up to $150,000 per work....  While it is too late to undue the illegal file sharing you have already done,** we have prepared an offer to enable our client to recoup the damages incurred **by your actions** and defray the costs of preventing this type of activity in the future....
>
> In exchange for a comprehensive release of all legal claims which **will enable you to avoid becoming a named defendant** in the lawsuit, our firm is authorized to accept the sum of **Seven Thousand Five Hundred Dollars ($7,500)** as full settlement for its claims.  **This offer will expire in two weeks.**  Thereafter, if our client chooses to settle, the demand **shall be Ten Thousand Dollars ($10,000) and this amount will continue to increase as litigation expenses accrue.**
>
> ....

9 - ORDER

> **[I]f you do not comply** with the above request **we intend
> to name you as a defendant** to the lawsuit and proceed
> against you either individually in a severed suit if you
> request, or jointly ... we leave the election of how to
> proceed up to you, **though we note costs and fees to sever
> and proceed against you individually in a separate suit
> are notable and we will demand that all such costs and
> fees be added to any settlement.**
>
> If forced to proceed against you, our client reserves the
> right to recover the maximum amount of damages, costs and
> attorney fees ... **which is $30,000 and up to $150,000....
> In light of the known facts of this case we have no doubt
> this infringement was intentional.**

Exhibit B attached to Answer and Cross Complaint (#2) in Voltage
Pictures, LLC v. Does 1-321, 3:13-cv-295-AA at pp. 1-2 (emphasis
added).

The letter goes on to make threats against attempts to delete
files with assertions that plaintiff's experts will find it anyway
and the costs associated with that will also be added to the
assessment.

Accordingly, plaintiff's tactic in these BitTorrent cases
appears to not seek to litigate against all the Doe defendants, but
to utilize the court's subpoena powers to drastically reduce
litigation costs and obtain, in effect, $7,500 for its product
which, in the case of Maximum Conviction, can be obtained for $9.99
on Amazon for the Blu-Ray/DVD combo or $3.99 for a digital rental.

The court will follow the majority of other courts in
declining to condone this practice of en masse joinder in
BitTorrent cases and orders all Does beyond Doe one severed and

10 - ORDER

dismissed from the cases. While the ease with which movies can be copied and disseminated in the digital age no doubt has a deleterious effect on the paying market for such entertainment, just as a mass of plaintiffs harmed through separate, but similar acts of one defendant must generally seek redress individually, so should a plaintiff seek redress individually against a mass of defendants who use similar tactics to harm a plaintiff. Even though it makes a good deal of sense to start these cases initially by joining all Does so that the process of discovering them can be economized,[2] it has now become apparent that plaintiffs' counsel seeks to abuse the process and use scare tactics and paint all Doe users, regardless of degree of culpability in the same light. This practice does not "comport with the principles of fundamental fairness."

Participation in a specific swarm is too imprecise a factor, absent additional information relating to the alleged copyright infringement, to support joinder under Rule 20(a). Moreover, the result is logistically unmanageable cases involving unique defenses in addition to fundamental unfairness. Accordingly, the court quashes all outstanding subpoenas and dismisses all Doe defendants beyond the first Doe in each case. Plaintiff shall have 10 days to

---

[2]I, however, note that even this justification is muted because it is not clear if the account holders of a given IP address is the actual infringer. Moreover, mere participation in a given swarm may not result in a full download.

11 - ORDER

submit amended complaints.  All other pending motions are denied as moot.

## CONCLUSION

For the reasons stated above, Doe defendants are ordered severed and dismissed in these cases beyond Doe #1 in each case. All outstanding subpoenas are quashed and all other pending motions are denied as moot.

DATED this _____ day of May, 2013.

_____
Ann Aiken
United States District Judge

12 - ORDER